1  Bevin Allen Pike (SBN 221936)
   Bevin.Pike@capstonelawyers.com
2  Orlando Villalba (SBN 232165)
   Orlando.Villalba@capstonelawyers.com
3  Capstone Law APC
   1875 Century Park East, Suite 1000
4  Los Angeles, California 90067
   Telephone:    (310) 556-4811
5  Facsimile:    (310) 943-0396

6  Attorneys for Plaintiff Israel Rodriguez

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10 | ISRAEL RODRIGUEZ, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"), | Case No.:  5:20-CV-02365 |

11

12

13                Plaintiff,

14        vs.

15 URS MIDWEST, INC., a Delaware corporation; UNITED ROAD SERVICES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

16

17

18                Defendants.

**SECOND AMENDED CLASS ACTION COMPLAINT & ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698, *ET SEQ.***

(1) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages);
(2) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records);
(3) Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination);
(4) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses);
(5) Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.;*
(6) Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and
(7) Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

1       Plaintiff Israel Rodriguez, individually and on behalf of all other members of the

2  public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved

3  employees, alleges as follows:

4                             **JURISDICTION AND VENUE**

5      1.    This class action and state enforcement action is brought pursuant to California

6  Code of Civil Procedure section 382 and Labor Code Private Attorneys General Act of 2004,

7  California Labor Code section 2698 *et seq.* ("PAGA") to recover civil penalties and any other

8  relief recoverable by the State of California on behalf of current and former non-exempt,

9  hourly-paid employees of Defendants in California and received at least one wage statement,

10  and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of

11  the Labor Code or any provision regulating hours and days of work in the applicable Industrial

12  Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.

13      2.    The monetary damages, penalties, and restitution sought by Plaintiff exceed the

14  minimal jurisdiction limits of the Superior Court and will be established according to proof at

15  trial.  This Court has jurisdiction over this action pursuant to the California Constitution,

16  Article VI, section 10.  The statutes under which this action is brought do not specify any

17  other basis for jurisdiction.  Plaintiff's share of damages, penalties, and other relief sought in

18  this action does not exceed $75,000.

19      3.    This Court has jurisdiction over Defendants because Defendants are either

20  citizens of California, have sufficient minimum contacts in California, or otherwise

21  intentionally avail themselves of the California market so as to render the exercise of

22  jurisdiction over them by the California courts consistent with traditional notions of fair play

23  and substantial justice.

24      4.    Venue is proper in this Court, because Defendants employ persons in this

25  county, and employed Plaintiff in this county, and thus a substantial portion of the transactions

26  and occurrences related to this action occurred in this county.

27      5.    The PAGA statute authorizes aggrieved employees to sue directly as the proxy

28  of the State of California for civil penalties for violations of various provisions in the

California Labor Code.

**THE PARTIES**

6.      Plaintiff ISRAEL RODRIGUEZ is a resident of San Diego, in San Diego County, California.  Defendants employed Plaintiff as an hourly-paid, non-exempt employee from approximately August 28, 2015, to approximately April 2, 2018.  Plaintiff worked for Defendants out of their facility in Fontana, California.  During his employment, Plaintiff typically worked ten (10) to fourteen (14) hours per day, five (5) to seven (7) days per week, and seventy (70) or more hours per week.  His job duties included, without limitation, driving a vehicle hauler; conducting inspections of his truck; loading, unloading, and inspecting cars that he was hauling; and preparing manifests and other paperwork.

7.      URS MIDWEST, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

8.      Defendant UNITED ROAD SERVICES, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

9.      Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

10.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, or managers URS MIDWEST, INC. and UNITED ROAD SERVICES, INC. at all relevant times.

11.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, URS MIDWEST, INC.; UNITED ROAD SERVICES, INC.; and/or DOES 1 through 10 (collectively,

"Defendants" or "URS"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

12.  At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

13.  Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

14.  Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff and class members.  Each Defendant had the power to hire and fire Plaintiff and class members, supervised and controlled their work schedule and/or conditions of employment, determined their rate of pay, and maintained their employment records.  Defendants suffered or permitted Plaintiff and class members to work and/or "engaged" Plaintiff and class members so as to create a common law employment relationship.  As joint employers of Plaintiff and class members, Defendants are jointly and severally liable for the civil penalties and all other relief available to Plaintiff and class members under the law.

15.  Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class members because Defendants have:

(a)  jointly exercised meaningful control over the work performed by Plaintiff and class members;

(b)  jointly exercised meaningful control over Plaintiff's and class members'

1                  wages, hours, and working conditions, including the quantity, quality

2                  standards, speed, scheduling, and operative details of the tasks

3                  performed by Plaintiff and class members;

4        (c)     jointly required that Plaintiff and class members perform work which is

5                  an integral part of Defendants' businesses; and

6        (d)     jointly exercised control over Plaintiff and class members as a matter of

7                  economic reality in that Plaintiff and class members were dependent on

8                  Defendants, who shared the power to set the wages of Plaintiff and class

9                  members and determine their working conditions, and who jointly

10                reaped the benefits from the underpayment of their wages and

11                noncompliance with other statutory provisions governing their

12                employment.

13      16.     Plaintiff is informed and believes, and further alleges, that at all relevant times

14 there has existed a unity of interest and ownership between Defendants such that any

15 individuality and separateness between the entities has ceased.

16      17.     URS MIDWEST, INC.; UNITED ROAD SERVICES, INC.; and DOES 1-10

17 are therefore alter egos of each other.

18      18.     Adherence to the fiction of the separate existence of Defendants would permit

19 an abuse of the corporate privilege, and would promote injustice by protecting Defendants

20 from liability for the wrongful acts committed by them under the name URS.

21      19.     Plaintiff further alleges, upon information and belief, that Defendants are alter

22 egos of each other for the additional following reasons:

23        (a)     On the California Secretary of State's website

24                  (https://businesssearch.sos.ca.gov/) and Michigan Secretary of State's

25                  website (https://www.michigan.gov/corpentitysearch), URS MIDWEST,

26                  INC. and UNITED ROAD SERVICES, INC. have the same entity

27                  address and/or mailing address, which is "10701 Middlebelt Rd.,

28                  Romulus, Michigan 48174";

1        (b)    URS MIDWEST, INC. and UNITED ROAD SERVICES, INC. share

2                the same officers and directors, including David Gann and Kathleen

3                McCann;

4        (c)    On information and belief, URS MIDWEST, INC and UNITED ROAD

5                SERVICES, INC. share the same agent for service of process, Corporate

6                Creations Network Inc.; and

7        (d)    On information and belief, URS MIDWEST, INC and UNITED ROAD

8                SERVICES, INC. utilize the same standardized employment forms and

9                issue the same employment policies.

## GENERAL ALLEGATIONS

20.    Defendants are Delaware corporations which provide nationwide vehicle transportation services.  Upon information and belief, Defendants have six (6) locations in the State of California.  Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their corporate headquarters in Romulus, Michigan, which is responsible for recruiting and hiring of new employees, and communicating and implementing Defendants' company-wide policies, including timekeeping policies, to employees throughout California.

21.    In particular, Plaintiff and class members, on information and belief, received the same standardized documents and/or written policies.  Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.  Upon information and belief, Defendants set forth uniform policies and procedures in several documents provided at an employee's time of hire.

22.    Upon information and belief, Defendants maintain a centralized Payroll department at their corporate headquarters in Romulus, Michigan, which processes payroll for all non-exempt, hourly-paid employees working for Defendants at their various locations and jobsites in California, including Plaintiff and class members.  Based upon information and

belief, Defendants issue the same formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their work locations. Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

23. Defendants continue to employ non-exempt or hourly-paid employees in California.

24. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

25. Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

26. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock. In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

27. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law. In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

28. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

29. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all

wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to minimum wages, within permissible time periods.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to minimum wages, within permissible time periods.

31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to the portion of wages previously paid and subsequently unlawfully deducted by Defendants.

32.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that Defendants knew or should have known that they had a duty to cover the costs and expenses Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug tests, but willfully, knowingly, and intentionally failed to do so.

33.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

34.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to provide Plaintiff and class members with written notice of the material terms of their employment with Defendants as required by the California Wage Theft Prevention Act, but willfully, knowingly, and intentionally failed to do so.

35.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to provide Plaintiff and class members with personal protective equipment to protect their life, safety, and health

1  in the workplace, but willfully, knowingly, and intentionally failed to do so.

2      36.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

3  mentioned, Defendants knew or should have known that they had a duty to compensate

4  Plaintiff and class members for all hours worked, and that Defendants had the financial ability

5  to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and

6  falsely represented to Plaintiff and class members that they were properly denied wages, all in

7  order to increase Defendants' profits.

8      37.    At all times herein set forth, PAGA provides that any provision of law under

9  the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be

10  assessed and collected by the LWDA for violations of the California Labor Code and

11  applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a

12  civil action brought on behalf of themselves and other current or former employees pursuant

13  to procedures outlined in California Labor Code section 2699.3.

14      38.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any

15  person who was employed by the alleged violator and against whom one or more of the

16  alleged violations was committed."

17      39.    Plaintiff and other current and former employees of Defendants are "aggrieved

18  employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current

19  or former employees and one or more of the alleged violations were committed against them.

20      40.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved

21  employee, including Plaintiff, may pursue a civil action arising under PAGA after the

22  following requirements have been met:

23          (a)    The aggrieved employee or representative shall give written notice by

24              online filing with the LWDA and by certified mail to the employer of

25              the specific provisions of the California Labor Code alleged to have

26              been violated, including the facts and theories to support the alleged

27              violation.

28          (b)    An aggrieved employee's notice filed with the LWDA pursuant to

2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)   The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA's Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

41.   Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a)   The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b)   An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)   The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil

FIRST AMENDED CLASS ACTION COMPLAINT

action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

42.   On March 29, 2019, Plaintiff provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3.  Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-680658-19.  A true and correct copy of Plaintiff's written notice to the LWDA and Defendants is attached hereto as "Exhibit 1."

43.   As of the filing date of this complaint, over 65 days have passed since Plaintiff sent the notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

44.   Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 221, 222.5, 224, 226(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 2810.5, 6401, and 6403.

45.   Labor Code section 558 (a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages."  Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

46.     Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

47.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

48.     Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 221, 222.5, 224, 226(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 2810.5, 6401, and 6403.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on his own behalf, as well as on behalf of each and all other persons similarly situated, and thus seeks class certification under California Code of Civil Procedure section 382.

50.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

51.     Plaintiff's proposed classes consist of and are defined as follows:

> All persons who worked for Defendants as non-exempt, hourly-paid employees in California at any time from January 31, 2017, until the date of trial ("Class").

52.     Plaintiff's proposed subclass consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly-paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

53.     Members of the Class and Subclass are referred to herein as "class members."

54.     Plaintiff reserves the right to redefine the Class and Subclass and to add additional subclasses as appropriate based on further investigation, discovery, and specific

theories of liability.

55.     There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

(a)     Whether Defendants failed to pay Plaintiff and class members at least minimum wages for all hours worked;

(b)     Whether Defendants provided Plaintiff and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

(c)     Whether Defendants failed to pay earned minimum wages due to Plaintiff and class members upon their discharge;

(d)     Whether Defendants failed to pay timely minimum wages to Plaintiff and class members during their employment;

(e)     Whether Defendants unlawfully deducted a portion of Plaintiff's and class members' pay;

(f)     Whether Defendants failed to pay Plaintiff and class members for the costs of mandatory physical examinations and/or drug testing;

(g)     Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(h)     Whether Defendants failed to provide written notice of information material to Plaintiff's and class members' employment with Defendants;

(i)     Whether Defendants failed to provide Plaintiff and class members with personal protective equipment;

(j)     Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(k)     The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

56.     There is a well-defined community of interest in the litigation and the class members are readily ascertainable:

(a)     Numerosity:  The class members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

(b)     Typicality:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all class members as demonstrated herein.

(c)     Adequacy:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein.  Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any class member.  Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d)     Superiority:  The nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the

1   entire class.

2       (e)    <u>Public Policy Considerations</u>:  Employers in the State of California

3   violate employment and labor laws every day.  Current employees are

4   often afraid to assert their rights out of fear of direct or indirect

5   retaliation.  Former employees are fearful of bringing actions because

6   they believe their former employers might damage their future

7   endeavors through negative references and/or other means.  Class

8   actions provide the class members who are not named in the complaint

9   with a type of anonymity that allows for the vindication of their rights

10   while simultaneously protecting their privacy.

**FIRST CAUSE OF ACTION**

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

**Minimum Wages**

**(Against all Defendants)**

15   57.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

16   and every allegation set forth above.

17   58.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197,

18   1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the

19   minimum wage to be paid to employees, and the payment of a wage less than the minimum so

20   fixed is unlawful.  Compensable work time is defined by the applicable wage order as "the

21   time during which an employee is subject to the control of an employer, and includes all the

22   time the employee is suffered or permitted to work, whether or not required to do so."  Cal.

23   Code. Regs. tit. 8, § 11090(2)(H) (defining "Hours Worked").

24   59.    First, Defendants, on a company-wide basis, failed to compensate employees

25   for certain tasks required as part of their employment, including, but not limited to: waiting

26   while their trucks were serviced, pre-shift traveling to remote locations to pick up their trucks,

27   and moving trucks at Defendants' yard during their days off.  For example, Plaintiff was not

28   compensated for time spent waiting for his truck to be serviced.  On several occasions,

1    Plaintiff was called by dispatch while driving his truck and instructed to take the truck to be

2    serviced immediately.  Plaintiff waited two (2) to three (3) hours at the service station and was

3    not paid for this time.

4        60.    Second, during the relevant time period, Defendants maintained and

5    implemented a company-wide policy of requiring all employees to undergo mandatory drug

6    testing and/or physical examinations, upon hiring and periodically thereafter.  This required

7    employees to travel to a medical clinic on their own time and using their own personal

8    vehicles or public transportation to undergo mandatory drug testing and/or physical

9    examinations.  At all times, Defendants were in control of scheduling the dates and times for

10   the tests and/or examinations, selecting the providers/clinics where the tests and/or

11   examinations were to take place, and determining the scope of the tests and/or examinations.

12   Defendants gave Plaintiff and class members strict instructions to obtain a drug test, and

13   Plaintiff and class members underwent the testing for the sole benefit of Defendants.

14   However, Defendants did not compensate Plaintiff and class members for the time they spent

15   traveling to and from the medical clinics or for the time they spent undergoing their drug tests

16   and/or physical examinations.

17       61.    Defendants did not pay at least minimum wages for those hours worked off-the-

18   clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

19   Accordingly, Defendants failed to pay at least minimum wages to Plaintiff and class members

20   for all of the hours they worked.

21       62.    Defendants' failure to pay Plaintiff and class members minimum wages violates

22   California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to

23   California Labor Code section 1194.2, Plaintiff and class members are entitled to recover

24   liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

25                    **SECOND CAUSE OF ACTION**

26   **Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage**

27              **Statements and Failure to Maintain Accurate Payroll Records**

28                       **(Against all Defendants)**

63.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

64.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

65.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements that failed to comply with Labor Code sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9). Because Defendants did not record the time Plaintiff and Subclass members spent working off-the-clock, Defendants did not furnish wage statements to Plaintiff and Subclass members containing the correct amount of gross wages earned (Labor Code § 226(a)(1)), accurate totals of the hours worked (Labor Code § 226(a)(2)), correct amount of net wages earned (Labor Code § 226(a)(5)), or accurate number of hours worked at each hourly rate (Labor Code § 226(a)(9)).

66.    The wage statement deficiencies also include, without limitation, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the correct name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

67.    California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under

conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period.  At all relevant times, Defendants failed, on a company-wide basis, to keep records of work period start and stop times for Plaintiff and Subclass members in violation of section 1198.

68.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…"  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

69.    Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

**THIRD CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202 – Wages Not Timely Paid Upon Termination**

**(Against all Defendants)**

70.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

71.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or

her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

72.     For example, Plaintiff resigned on April 2, 2018.  However, Defendants did not provide him with his final paychecks until the end of the pay period, on April 6, 2018 and April 7, 2018, more than four (4) days later.  Thus, Defendants failed to pay Plaintiff his final wages within seventy-two (72) hours, in violation of Labor Code section 202.  Further, on information and belief, Defendants has a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202.

73.     Additionally, during the relevant time period, Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to minimum wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

74.     Defendants' failure to pay Plaintiff and those class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code § 2802 – Unpaid Business-Related Expenses**

**(Against all Defendants)**

75.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

76.     At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by

Page 18

the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 9-2001, provides that: "[w]hen the employer requires the use of tools or equipment or they are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage may provide and maintain hand tools and equipment customarily required by the particular trade or craft."

77.     First, during the relevant time period, Defendants, on a company-wide basis, required that Plaintiff and class members use their own personal cellular phones and/or cellular phone data to carry out their job duties, but Defendants failed to reimburse them for the costs of their work-related cellular phone expenses.  For example, Plaintiff and class members were required to install an application on their personal cellular phones called "V-TAS."  V-TAS used a substantial amount of data and was used to track all aspects of employees' work – location, mileage, time on the road, and so forth.  However, Defendants failed to reimburse Plaintiff and class members for all expenses incurred with regard to V-TAS.  For example, Plaintiff was required to upgrade his cellular data plan to "unlimited" in order to handle the massive amounts of data used by the V-TAS application, at a cost of $70 per month.  However, Defendants only reimbursed $40 of his cellular phone expenses per month.

78.     Second, Defendants did not provide Plaintiff and class members with necessary safety gear, thus requiring Plaintiff and class members to provide their own such gear, such as safety vests and gloves.  However, Plaintiff and class members were not reimbursed for these expenses.  For example, Plaintiff had to purchase gloves on a biweekly basis, at a cost of $10 or more per pair.

79.     Third, Defendants also mandated that Plaintiff and class members purchase and maintain their own tools and supplies which they were required to use at work.  Defendants had a company-wide policy of requiring employees to purchase all necessary tools, and,

throughout his employment, Plaintiff purchased items including, but not limited to: loading bars, height sticks, night lamps, and cleaning supplies.  Plaintiff estimates that he spent approximately $180 total on tools and $60 per month for supplies over the course of his employment.

80.    Fourth, Defendants required Plaintiff and class members to wear uniforms bearing the company logo on a daily basis, but failed to provide Plaintiff and class members with uniform cleaning services or reimburse them for cleaning expenses incurred.  For example, due to the nature of their work, Plaintiff's and class members' uniform pants and shirts would become stained with grease such that they were unable to mix these clothes in with their other laundry.  As a result, they had to wash uniform items separately from any of their other items, thus incurring additional utility and laundry expenses.

81.    Finally, Defendants had a company-wide policy of requiring Plaintiff and class members to utilize their own personal vehicles to carry out company business, but Defendants failed to reimburse them for all costs of travel, including mileage.  As stated, Defendants had a company-wide policy of requiring Plaintiff and class members to travel in their own personal vehicles to medical clinics to undergo mandatory drug testing, but did not reimburse them for their travel expenses.  For example, as described above, Plaintiff drove his personal vehicle to undergo drug testing per Defendants' instructions, but was not reimbursed for his mileage to and from the medical facilities.  As a further example, some employees were required to use their personal vehicles to travel to pick up their trucks from remote locations.  Although Defendants required Plaintiff and class members to utilize their own vehicles to complete these tasks as part of their job duties, Defendants never reimbursed them for all of their travel expenses.  Defendants had, and continue to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred.

82.    Defendants could have provided Plaintiff and class members with the actual tools for use on the job, including safety gear, tools and supplies, company phones, and company vehicles to be used for fulfilling work-related tasks, or reimbursed employees for their actual cellular phone usage, travel expenses, tool and supply expenses, uniform

expenses, and mileage.  Instead, Defendants passed these operating costs off onto Plaintiff and class members.  Thus, Defendants had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred.

83.     Defendants' policy and/or practice of passing its operating costs on to Plaintiff and class members by requiring that they provide their own safety gear, tools, and supplies, and use their own personal cellular phones and personal vehicles for business, and failing to reimburse these expenses is in violation of California Labor Code section 2802.  Plaintiff and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest.

**FIFTH CAUSE OF ACTION**

**For Civil Penalties, Pursuant to California Labor Code §§ 2698, *et seq.***

**(By Plaintiff on Behalf of the State of California and Aggrieved Employees Against Defendants)**

84.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above

85.     California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.  Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 221, 222.5, 224, 226(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.  Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 1182.12 and 2810.5.

86.     Defendant's conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

        (a)     Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, 1198, and the applicable IWC wage order for Defendant's failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked as alleged herein;

(b)     Violation of Labor Code sections 226(a), 1198, and the applicable IWC wage order for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees as alleged herein;

(c)     Violations of Labor Code sections 1174(d), 1198, and the applicable IWC wage order for failure to maintain payroll records as alleged herein;

(d)     Violation of Labor Code sections 201, 202, and 203 for failure to pay all earned wages upon termination as alleged herein;

(e)     Violation of Labor Code section 204 for failure to pay all earned wages during employment as set forth below;

(f)     Violation of Labor Code sections 221 and 224 for unlawful deductions from Plaintiff's and other aggrieved employees' wages as set forth below;

(g)     Violation of Labor Code section 222.5 for failure to pay Plaintiff and other aggrieved employees for costs incurred for obtaining any medical or physical examination as set forth below;

(h)     Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for necessary expenditures incurred in the performance of work as alleged herein;

(i)     Violation of Labor Code section 2810.5 for failure to provide notice of material terms of employment to Plaintiff and other aggrieved employees, as set forth below; and

(j)     Violation of Labor Code sections 6401 and 6403 for failure to provide Plaintiff and other aggrieved employees with safety and/or personal protective equipment, as set forth below.

87.     At all relevant times herein set forth, California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an

employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed.  Labor Code section 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

88.     At all relevant times herein, California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all relevant times herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

89.     During the relevant time period, Defendants willfully failed to pay Plaintiff and other aggrieved employees all wages due including, but not limited to, minimum wages, within the time limitations specified by California Labor Code section 204.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 210 and/or 2699(a), (f), and (g).

90.     At all relevant times, California Labor Code section 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.  California Labor Code section 224 also provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a deduction is expressly authorized in writing by the employee."

91.     During the relevant time period, Defendants unlawfully deducted a portion of wages previously paid to Plaintiff and other aggrieved employees in violation of California Labor Code section 221.  Defendants systematically, and on a company-wide basis, took money out of Plaintiff's and other aggrieved employees' pay for parking tickets incurred during deliveries. Such deductions were not expressly authorized in writing by Plaintiff and other aggrieved employees.  Thus, Defendants' company-wide policy and/or practice of deducting money from Plaintiff's and other aggrieved employees' paychecks without their written authorization

constitutes an unlawful deduction of wages, in violation of California Labor Code sections 221 and 224.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (g).

92.  At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any employment-related medical or physical examination.

93.  At all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and other aggrieved employees undergo a mandatory drug test, physical examination, but required them to do so at their own expense. As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiff and other aggrieved employees, travel to a specified medical clinic on their own time using their own means of transportation to undergo drug testing and/or physical examinations. At all times, Defendants were in control of scheduling the date and time for the drug testing and/or physical examination, selecting the provider/facility where the drug testing and/or physical examination was to take place, and determining the scope of the examination and drug test and/or physical examination.

94.  For example, upon being hired, Plaintiff was instructed by Defendants to travel to a clinic and obtain a drug test.  Plaintiff followed Defendants' instructions, traveled to the facility Defendants selected, and underwent the drug test.  Further, Plaintiff and other aggrieved employees were required to obtain additional drug tests periodically throughout their employment.  On one such occasion, Plaintiff was required to travel from Defendants' facility in Oxnard, California to a medical clinic and spent a total of one-and-a-half (1 ½) to two (2) hours driving to and from the clinic and taking the drug test.

95.  However, Defendants did not compensate Plaintiff and other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the drug testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical clinics. Defendants' policy and/or not paying for all costs Plaintiff and other aggrieved employees

incurred obtaining mandatory drug tests and/or physical examinations is in violation of California Labor Code section 222.5.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code section 2699(a), (f), and (g).

96.     At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code § 2810.5(a)(1)(A)-(C).

97.     At all relevant times, Defendants failed, on a company-wide basis, to provide written notice to Plaintiff and other aggrieved employees that lists the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C) and 2810.5(a)(3).  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code section 2699(a), (f), and (g).

98.     At all relevant times herein, California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy.  California Labor Code Section 6401 further provides that an employer must do everything reasonably necessary to protect the life, safety and health of its employees.  California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

99.     Defendants, on a company-wide basis, failed to provide Plaintiff and other

aggrieved employees with personal protective equipment, such as safety vests and gloves, to keep them safe in the workplace.  Despite the fact that Defendants required employees to wear certain personal protective equipment, including steel-toed boots, Defendants failed to provide such reasonably necessary equipment to Plaintiff and other aggrieved employees to keep them safe.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code section 2699(a), (f)-(g).

### SIXTH CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17200, *et seq.* –

### Unlawful Business Practices

### (Against all Defendants)

100.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

101.    Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

102.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

103.    Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq.*

104.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

(a)    Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1,

and 1198 and the applicable IWC Order, as alleged herein;

    (b)    Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), 1198, and the applicable IWC Order, as alleged herein;

    (c)    Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204 and the applicable IWC Order, as set forth below;

    (d)    Collecting or receiving wages already paid from Plaintiff and class members in violation of California Labor Code sections 221 and 224, as set forth below;

    (e)    Failing to pay the costs of mandatory physical examinations and/or drug testing in violation of California Labor Code section 222.5, as set forth below;

    (f)    Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein;

    (g)    Failing to provide written notice of information material to Plaintiff's and class members' employment with Defendants in violation of Labor Code section 2810.5(a)(1)(A)-(C), as set forth below; and

    (h)    Failing to provide Plaintiff and class members with personal protective equipment in violation of California Labor Code sections 6401 and 6403, as set forth below.

    105.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

106.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

107.    At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

108.    At all relevant times herein, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to minimum wages, within the time periods specified by California Labor Code section 204.

109.    At all times relevant herein, California Labor Code section 221 provides that it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.  California Labor Code section 224 also provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a deduction is expressly authorized in writing by the employee."

110.    During the relevant time period, Defendants unlawfully deducted a portion of wages previously paid to Plaintiff and class members in violation of California Labor Code section 221.  Defendants systematically, and on a company-wide basis, took money out of Plaintiff's and class members' pay for parking tickets incurred during deliveries.  Such deductions were not expressly authorized in writing by Plaintiff and class members.  Thus, Defendants' company-wide policy and/or practice of deducting money from Plaintiff's and class members' paychecks without their written authorization constitutes an unlawful deduction of wages, in violation of California Labor Code sections 221 and 224.

111.    At all relevant times herein, California Labor Code section 222.5 requires

employers to pay for the costs an employee incurs for obtaining any medical or physical examination taken pursuant to any law or regulation.

112. At all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members undergo mandatory drug tests and/or physical examinations, but required them to do so at their own expense. As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiff and class members, travel to a medical clinic on their own time and using their own personal vehicles to undergo drug testing and/or physical examinations. At all times, Defendants were in control of scheduling the date and time for the drug testing and/or examination, selecting the provider/clinic where the drug testing and/or examination was to take place, and determining the scope of the drug test and/or examination.

113. For example, upon being hired, Plaintiff was instructed by Defendants to travel to a clinic and obtain a drug test. Plaintiff followed Defendants' instructions, traveled to the facility Defendants selected, and underwent the drug test. Further, Plaintiff and class members were required to obtain additional drug tests periodically throughout their employment. On one such occasion, Plaintiff was required to travel from Defendants' facility in Oxnard, California to a medical clinic and spent a total of one-and-a-half (1 ½) to two (2) hours driving to and from the clinic and taking the drug test.

114. However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the drug testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical clinics. Defendants' policy and/or not paying for all costs Plaintiff and class members incurred obtaining mandatory drug tests and/or physical examinations is in violation of California Labor Code section 222.5.

115. At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified

at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code § 2810.5(a)(1)(A)-(C).

116.    At all relevant times, on information and belief, Defendants failed, on a company-wide basis, to provide written notice to Plaintiff and class members that lists the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C) and 2810.5(a)(3).

117.    Defendants' failure to provide Plaintiff and class members with written notice of basic information regarding their employment with Defendants is in violation of Labor Code sections 2810.5(a)(1)(A)-(C) and 2810.5(a)(3).

118.    At all relevant times herein, California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy.  California Labor Code Section 6401 further provides that an employer must do everything reasonably necessary to protect the life, safety and health of its employees.  California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

119.    Defendants, on a company-wide basis, failed to provide Plaintiff and class members with personal protective equipment, such as gloves and/or safety vests, to keep them safe in the workplace, including Defendants' depots and other facilities.  Despite the fact that Defendants required employees to wear certain personal protective equipment, including gloves and/or safety vests, Defendants failed to provide such reasonably necessary equipment to Plaintiff and class members to keep them safe. Thus, Defendants' failure to provide Plaintiff and class members with basic personal protective equipment for the workplace

1    violates Labor Code sections 6401 and 6403.

2        120.    As a result of the violations of California law herein described, Defendants

3    unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members

4    have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged

5    herein.

6        121.    Pursuant to California Business & Professions Code sections 17200 *et seq.*,

7    Plaintiff and class members are entitled to restitution of the wages withheld and retained by

8    Defendants during a period that commences four years prior to the filing of this complaint; a

9    permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and

10    class members; and an award of attorneys' fees pursuant to California Code of Civil

11    Procedure section 1021.5 and other applicable laws; and an award of costs.

12                          **SEVENTH CAUSE OF ACTION**

13        **Violation of California Business & Professions Code §§ 17200, et seq. –**

14                          **Unfair Business Practices**

15                          **(Against all Defendants)**

16        122.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

17    and every allegation set forth above.

18        123.    Defendants are "persons" as defined by California Business & Professions

19    Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

20    and/or associations.

21        124.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

22    and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered

23    injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff

24    seeks to enforce important rights affecting the public interest within the meaning of Code of

25    Civil Procedure section 1021.5.

26        125.    A violation of California Business & Professions Code sections 17200, *et seq.*

27    may be predicated on any unfair business practice.

28        126.    Pursuant to California Business & Professions Code sections 17200 *et seq.*,

Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory benefits withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all statutory benefits due to Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1. For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs. Plaintiff reserves the right to amend his prayer for relief to seek a different amount.

### Class Certification

2. That this case be certified as a class action;

3. That Plaintiff be appointed as the representative of the Classes and Subclass;

4. That counsel for Plaintiff be appointed as class counsel.

### As to the First Cause of Action

5. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay minimum wages to Plaintiff and class members;

6. For general unpaid wages and such general and special damages as may be appropriate;

7. For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

8. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

9. For liquidated damages pursuant to California Labor Code section 1194.2; and

10. For such other and further relief as the Court may deem equitable and appropriate.

### As to the Second Cause of Action

11. That the Court declare, adjudge and decree that Defendants violated the recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage Orders as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized wage statements thereto;

12. For all actual, consequential and incidental losses and damages, according to proof;

13. For injunctive relief pursuant to California Labor Code section 226(h);

14. For statutory penalties pursuant to California Labor Code section 226(e);

15. For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

16. For such other and further relief as the Court may deem equitable and appropriate.

### As to the Third Cause of Action

17. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay minimum wages owed at the time of termination of the employment of Plaintiff and other terminated class members;

18. For all actual, consequential and incidental losses and damages, according to proof;

19. For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

20. For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

21. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

22. For such other and further relief as the Court may deem equitable and

1 | appropriate.

2 | **As to the Fourth Cause of Action**

3 | 23. That the Court declare, adjudge and decree that Defendants violated California

4 | Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

5 | related expenses and costs incurred by Plaintiff and class members;

6 | 24. For unpaid business-related expenses and such general and special damages as

7 | may be appropriate;

8 | 25. For pre-judgment interest on any unpaid business-related expenses from the

9 | date such amounts were due, or as otherwise provided by law;

10 | 26. For all actual, consequential, and incidental losses and damages, according to

11 | proof;

12 | 27. For attorneys' fees and costs pursuant to California Labor Code

13 | section 2802(c), or as otherwise provided by law; and

14 | 28. For such other and further relief as the Court may deem equitable and

15 | appropriate.

16 | **As to the Fifth Cause of Action**

17 | 29. That the Court declare, adjudge and decree that Defendants violated the

18 | following California Labor Code provisions as to Plaintiff and/or other aggrieved employees:

19 | 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all

20 | hours worked); 226(a), 1174(d) and 1198 (by failing to provide accurate wage statements and

21 | maintain accurate payroll records); 204 (by failing timely to pay all earned wages during

22 | employment); 201, 202, 203 (by failing timely to pay all earned wages upon termination); 221

23 | and 224 (for collecting or receiving wages already paid from Plaintiff and other aggrieved

24 | employees); 222.5 (by failing to pay the costs of mandatory drug testing and/or physical

25 | examinations); 2802 (by failing to reimburse business expenses); 2810.5 (by failing to provide

26 | written notice of material terms of employment); and 6401 and 6403 (by failing to provide

27 | personal protective equipment);

28 | 30. For civil penalties pursuant to California Labor Code sections 210, 225.5,

226.3, 256, 558, 1174.5, 1197.1, 2699(a) and/or 2699(a), (f) and (g), for violations of California Labor Code sections 201, 202, 203, 204, 221, 222.5, 224, 226(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 2810.5, 6401, and 6403;

31.    For attorneys' fees and costs pursuant to California Labor Code section 2699(g)(1), and any and all other relevant statutes, for Defendants' violations of California Labor Code sections 201, 202, 203, 204, 221, 222.5, 224, 226(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 2810.5, 6401, and 6403;

32.    For pre-judgment and post-judgment interest as provided by law; and

33.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Sixth Cause of Action

34.    That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and class members accurate and complete wage statements, failing to maintain accurate payroll records for Plaintiff and class members, failing timely to pay Plaintiff and class members all earned wages during employment, collecting or receiving wages already paid to Plaintiff and class members, failing to reimburse Plaintiff and class members for the costs of mandatory medical examinations, failing to reimburse Plaintiff and class members for business-related expenses, failing to provide written notice of information material to employment, and failing to provide Plaintiff and class members with personal protective equipment, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

35.    For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

36.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200 *et seq.*;

1    37.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

2    California Code of Civil Procedure section 1021.5; and

3    38.    For such other and further relief as the Court may deem equitable and

4    appropriate.

5                     **As to the Seventh Cause of Action**

6    39.    That the Court declare, adjudge and decree that Defendants' conduct of denying

7    Plaintiff and class members the statutory benefits guaranteed to them constitutes an unfair

8    business practice in violation of California Business and Professions Code sections 17200, *et*

9    *seq.*;

10   40.    For restitution of the statutory benefits unfairly withheld from Plaintiff and

11   class members and prejudgment interest from the day such amounts were due and payable;

12   41.    For the appointment of a receiver to receive, manage and distribute any and all

13   funds disgorged from Defendants and determined to have been wrongfully acquired by

14   Defendants as a result of violations of California Business & Professions Code sections 17200

15   *et seq.*;

16   42.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

17   California Code of Civil Procedure section 1021.5;

18   43.    For pre-judgment and post-judgment interest as provided by law; and

19   44.    For such other and further relief as the Court may deem equitable and

20   appropriate.

21   Dated: May 14, 2021                        Respectfully submitted,

22                                              Capstone Law APC

23

24                                      By: _____

25                                              Bevin Allen Pike
                                                Orlando Villalba

26                                              Attorneys for Plaintiff Israel Rodriguez

27

28

# Exhibit 1



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

March 29, 2019

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/207)

Subject:    *Israel Rodriguez v. URS Midwest, Inc., et al.*

Dear PAGA Administrator:

This office represents Israel Rodriguez in connection with his claims under the California Labor Code. Mr. Rodriguez was an employee of URS MIDWEST, INC. and/or UNITED ROAD SERVICES, INC. (collectively, "URS").

The employers may be contacted directly at the addresses below:

URS MIDWEST, INC.
10701 MIDDLEBELT RD
ROMULUS MI 48174

UNITED ROAD SERVICES, INC.
10701 MIDDLEBELT RD
ROMULUS MI 48174

Mr. Rodriguez intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Mr. Rodriguez seeks relief on behalf of himself, the State of California, and other persons who were employed by URS in California as a non-exempt, hourly-paid employee and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

URS employed Mr. Rodriguez as a non-exempt, hourly-paid Driver from approximately August 28, 2015, to approximately April 2, 2018. Mr. Rodriguez worked for URS out of its facility in Fontana, California. During his employment, Mr. Rodriguez typically worked ten (10) to fourteen (14) hours per day, five (5) to seven (7) days per week, and 60 hours or more per week. At the time Mr. Rodriguez's employment with URS ended, he earned approximately $15.00 per hour plus commissions. His job duties included, without limitation, driving a vehicle hauler; conducting

1

inspections of his truck; loading, unloading, and inspecting cars that he was hauling; and preparing manifests and other paperwork.

URS committed one or more of the following Labor Code violations against Mr. Rodriguez, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

**URS's Company-Wide and Uniform Payroll and HR Practices**

URS MIDWEST, INC. and UNITED ROAD SERVICES, INC. are Delaware corporations which provide nationwide vehicle transportation services. Upon information and belief, URS has six (6) locations in the State of California. Upon information and belief, URS maintains a centralized Human Resources (HR) department at their headquarters in Romulus, Michigan, for all non-exempt, hourly-paid employees working for URS in California, including Mr. Rodriguez and other aggrieved employees. At all relevant times, URS issued and maintained uniform, standardized practices and procedures for all non-exempt, hourly-paid employees in California, including Mr. Rodriguez and other aggrieved employees, regardless of their location or position. The policies and procedures presently believed to cause violations of the California Labor Code are identified herein.

On information and belief, URS maintains a centralized Payroll department at their corporate headquarters in Romulus, Michigan, which processes payroll for all its non-exempt, hourly-paid employees in California, including Mr. Rodriguez and other aggrieved employees. Upon information and belief, URS issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location or position. URS processes payroll for non-exempt, hourly-paid employees in the same manner throughout California, and the same methods and formulas were used to calculate wages due to Mr. Rodriguez and other aggrieved employees in California. URS issued uniform, standardized wage statements to Mr. Rodriguez and other aggrieved employees during the relevant time period.

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined by the applicable Wage Order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11090(2)(H) (defining "Hours Worked").

First, URS has, on a company-wide basis, failed to implement any policies to authorize and permit drivers to take compliant meal periods, and instead engages in a practice of discouraging and

---

[1] These facts, theories, and claims are based on Mr. Rodriguez's experience and counsel's review of those records currently available relating to Mr. Rodriguez's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Mr. Rodriguez reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

impeding drivers from taking meal periods by requiring that they complete time-sensitive deliveries, which included traveling to various locations and unloading one or more vehicles from the truck, without building in sufficient time in their scheduled route to allow for 30-minute meal periods. Thus, Mr. Rodriguez and other aggrieved employees were prevented from taking all timely, uninterrupted 30-minute meal periods, and were also forced to work off-the-clock during their meal periods to complete their assigned routes. URS's company-wide policy and/or practice of assigning heavy workloads while allotting too little time for the drivers to actually complete their deliveries, prevented Mr. Rodriguez and other aggrieved employees from being relieved of their duties for meal periods.

Second, URS, on a company-wide basis, has also systematically discouraged and impeded Mr. Rodriguez and other aggrieved employees from taking meal periods by failing to schedule meal periods, even though it is aware and knows that employees are entitled to such meal periods. As a result of this uniform failure to schedule meal periods, Mr. Rodriguez and other aggrieved employees were not permitted and authorized to take uninterrupted 30-minute meal periods during their shifts in which they were entitled to receive a meal period. For example, during the relevant time period, Mr. Rodriguez frequently worked through his shift of eight (8) to ten (10) or more hours without being relieved of his duties to take a meal period.

Third, URS, on a company-wide basis, failed to compensate employees for certain tasks required as part of their employment. For example, Mr. Rodriguez was not compensated for time spent waiting for his truck to be serviced. On several occasions, Mr. Rodriguez was called by dispatch while driving his truck and instructed to take the truck to be serviced immediately. Mr. Rodriguez waited two (2) to three (3) hours at the service station and was not paid for this time. Additionally, other aggrieved employees sometimes had to travel in their personal vehicles prior to the start of their shifts to pick up their trucks from a remote location, which could take between one (1) and three (3) hours to complete. Also, other aggrieved employees were sometimes required to spend four (4) to five (5) hours at a time moving trucks within the URS yard before or after their scheduled shifts. Although URS required other aggrieved employees to complete these tasks, URS did not compensate them.

Fourth, during the relevant time period, URS maintained and implemented a company-wide policy of requiring all employees to undergo mandatory drug testing and/or physical examinations, upon hiring and periodically thereafter. This required employees to travel to a medical clinic on their own time and using their own personal vehicles or public transportation to undergo mandatory drug testing and/or physical examinations. At all times, URS was in control of scheduling the dates and times for the tests and/or examinations, selecting the providers/facilities where the tests and/or examinations were to take place, and determining the scope of the tests and/or examinations. URS gave Mr. Rodriguez and other aggrieved employees strict instructions to obtain a drug test, and Mr. Rodriguez and other aggrieved employees underwent the testing for the sole benefit of URS. However, URS did not compensate Mr. Rodriguez and other aggrieved employees for the time they spent traveling to and from the medical facilities or for the time they spent undergoing their drug tests and/or physical examinations.

URS knew or should have known that as a result of these company-wide practices, Mr. Rodriguez and other aggrieved employees were working off-the-clock and/or during their meal periods, and were suffered or permitted to perform work for which they were not paid. URS also knew, or should have known, that it did not pay Mr. Rodriguez and other aggrieved employees for this off-the-clock work.

Thus, URS did not pay minimum wages for meal periods and other off-the-clock hours that Mr. Rodriguez and other aggrieved employees worked through in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, URS regularly failed to pay at least minimum wages to Mr. Rodriguez and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Mr. Rodriguez and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest breaks and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012).

Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As stated, URS's company-wide policy and/or practice of assigning time-sensitive deliveries while allotting insufficient time for the drivers to actually complete the deliveries, prevented Mr. Rodriguez and other aggrieved employees from being relieved of their duties for meal periods. In conjunction with assigning heavy workloads, URS failed to schedule first and/or second meal periods, which has exacerbated the lack of break coverage. As a result of these practices and/or policies, Mr. Rodriguez and other aggrieved employees were frequently required to perform their job duties without being able to take a timely, compliant meal period.

For example, Mr. Rodriguez frequently worked through part or all of his meal periods, in order to complete his deliveries within URS management's expectations. Specifically, Mr. Rodriguez frequently missed his meal periods entirely or otherwise took them late or had to cut them short in order to return to work. Mr. Rodriguez often had to wait until he arrived at his destination before he was provided with a meal period, even when he arrived eight (8) hours into his shift. Thus, Mr. Rodriguez and other aggrieved employees had to work through part or all of their meal periods, have their meal periods interrupted, and/or wait extended periods of time before taking meal periods.

In addition, URS did not provide Mr. Rodriguez and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. For example, when Mr. Rodriguez worked in excess of ten (10) hours in a day, URS did not schedule or permit Mr.

Rodriguez to take a second 30-minute meal period. Instead, Mr. Rodriguez continued to work until he clocked out for the day.

Mr. Rodriguez and other aggrieved employees did not sign valid meal break waivers on days that they were entitled to meal periods and were not relieved of all duties. URS had a company-wide policy of requiring all newly-hired employees to sign blanket Meal Period Waivers at or near their time of hire. URS took the position that non-exempt, hourly-paid employees had waived their rights to first and second meal periods for the entirety of their employment and on that basis did not provide them with all meal periods to which they were entitled. Specifically, URS's "Break Agreement" form provides that the waiver remains in effect until the employee provides written notice indicating his or her decision to revoke.

URS's company-wide use of blanket meal waivers signed at or near the time of hire and imposition of the burden on employees to revoke the waivers in writing on a specific workday, discouraged and impeded Mr. Rodriguez and other aggrieved employees from taking all meal periods to which they were entitled. And, URS's presumption that second meal periods would not be provided for shifts in excess of ten (10) hours but less than twelve (12) hours due to blanket second meal period waivers discouraged and prevented Mr. Rodriguez and other aggrieved employees from taking second meal periods.

Moreover, an employer's obligation to provide a meal period is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay. *Id.* (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)).

Under Labor Code section 512(a) and the applicable IWC Wage Order, employees may waive their second meal periods only if they took their first meal period. That URS requires employees to sign Meal Period Waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because URS's obligation to provide Mr. Rodriguez and other aggrieved employees with meal periods did not arise until it had employed them for a full five (5) hours.

In addition, upon information and belief, URS engaged in a systematic, company-wide practice and/or policy of not paying meal period premiums for Mr. Rodriguez and other aggrieved employees, regardless of whether they were able to take a compliant meal period, in violation of the applicable IWC Wage Order and Labor Code sections 226.7 and 512(a). As a result, URS failed to provide Mr. Rodriguez and other aggrieved employees compliant meal periods in violation of California Labor Code sections 226.7 and 512 and failed to pay the full meal period premiums due.

Accordingly, URS failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), and 1198. Mr. Rodriguez and other aggrieved employees are entitled to civil penalties,

attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7 and 1198 – Failure to Authorize and Permit Rest Periods**

California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

As with meal periods, URS's company-wide scheduling policies and practices, or lack thereof, prevented Mr. Rodriguez and other aggrieved employees from being relieved of all duties such that they could take compliant rest periods.  As a result, Mr. Rodriguez and other aggrieved employees would work shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all ten (10) minute rest periods to which they were entitled.  Throughout his employment, Mr. Rodriguez regularly worked through his ten (10) minute rest periods in order to complete his deliveries for the day in a timely manner.

URS also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted.  Because of this practice and/or policy, Mr. Rodriguez and other aggrieved employees have not received premium pay for all missed rest periods.

Accordingly, URS failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7 and 1198.  Mr. Rodriguez and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records.  URS has not provided Mr. Rodriguez and other aggrieved employees with properly itemized wage statements.  Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in an subsequent pay period, not to exceed $4,000.  Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per

6

employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, URS has knowingly and intentionally provided Mr. Rodriguez and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. Specifically, URS violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9). Because URS did not record the time spent Mr. Rodriguez and other aggrieved employees spent working off-the-clock, URS did not list the correct amount of gross wages and net wages earned by Mr. Rodriguez and other aggrieved employees in compliance with section 226(a)(1) and 226(a)(5), respectively. For the same reason, URS failed to accurately list the total number of the hours worked by Mr. Rodriguez and other aggrieved employees in violation of section 226(a)(2) and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…" Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), URS willfully failed to maintain accurate payroll records for Mr. Rodriguez and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, URS failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Mr. Rodriguez and other aggrieved employees, in violation of section 1198. Also, in light of URS's failure to provide Mr. Rodriguez and other aggrieved employees with second 30-minute meal periods to which they were entitled, URS kept no records of meal start and end times for second meal periods.

Because URS failed to provide the accurate number of total hours worked on wage statements, Mr. Rodriguez and other aggrieved employees have been prevented from verifying, solely from

7

information on the wage statements themselves, that they were paid correctly and in full. Instead, Mr. Rodriguez and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Rodriguez and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, URS failed to pay Mr. Rodriguez and other aggrieved employees all wages due to them, including, but not limited to, minimum wages, and meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Mr. Rodriguez and aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 201, 202 and 203 – Failure to Timely Pay Final Wages Upon Termination

California Labor Code sections 201, 202 and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

For example, Mr. Rodriguez resigned on April 2, 2018. However, URS did not provide him with his final paychecks until the end of the pay period, on April 6, 2018 and April 7, 2018, more than 4 days later. Further, on information and belief, URS has a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202. Thus, URS failed to pay Mr. Rodriguez his final wages within seventy-two (72) hours, in violation of Labor Code section 202.

Additionally, URS willfully failed to pay Mr. Rodriguez and other aggrieved employees who are no longer employed by URS the earned and unpaid wages set forth above, including but not limited to, minimum wages, and meal and rest period premium wages, either at the time of discharge, or within

8

seventy-two (72) hours of their leaving URS's employ in violation of California Labor Code sections 201, 202 and 203.

Mr. Rodriguez and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 221 and 224 – Unlawful Deductions

California Labor Code section 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. California Labor Code section 224 also provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a deduction is expressly authorized in writing by the employee."

During the relevant time period, URS unlawfully deducted a portion of wages previously paid to Mr. Rodriguez and other aggrieved employees in violation of California Labor Code section 221. URS systematically, and on a company-wide basis, took money out of Mr. Rodriguez's and other aggrieved employees' pay for parking tickets incurred during deliveries. Such deductions were not expressly authorized in writing by Mr. Rodriguez and other aggrieved employees. Thus, URS's company-wide policy and/or practice of deducting money from Mr. Rodriguez's and other aggrieved employees' paychecks without their written authorization constitutes an unlawful deduction of wages, in violation of California Labor Code sections 221 and 224.

Mr. Rodriguez and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 225.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 222.5 – Failure to Pay Costs of Mandatory Physical Exams and/or Drug Testing

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any medical or physical examination.

During the relevant time period, URS required that Mr. Rodriguez and other aggrieved employees undergo mandatory drug tests and/or physical examinations, but required them to do so at their own expense. As stated, URS had a company-wide policy requiring that all employees, including Mr. Rodriguez and other aggrieved employees, travel to a medical clinic on their own time and using their own personal vehicles to undergo drug testing and/or physical examinations. At all times, URS was in control of scheduling the date and time for the drug testing and/or examination, selecting the provider/facility where the drug testing and/or examination was to take place, and determining the scope of the drug test and/or examination. For example, upon being hired, Mr. Rodriguez was instructed by URS to travel to a clinic and obtain a drug test. Mr. Rodriguez followed URS's instructions, traveled to the facility URS selected, and underwent the drug test. Further, Mr. Rodriguez was required to obtain additional drug tests periodically throughout his employment. On one such occasion, he was required to travel from URS's facility in Oxnard, California to a medical clinic and spent a total of one-and-a-half (1 ½) to two (2) hours driving to and from the clinic and taking the drug test.

However, URS did not compensate Mr. Rodriguez and other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent

undergoing the drug testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical clinics.  URS's policy and/or not paying for all costs Mr. Rodriguez and other aggrieved employees incurred obtaining mandatory drug tests and/or physical examinations is in violation of California Labor Code section 222.5.

Mr. Rodriguez and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 9-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, URS, on a company-wide basis, required that Mr. Rodriguez and other aggrieved employees use their own personal cellular phones and/or cellular phone data to carry out their job duties, but URS failed to reimburse them for all of the costs of their work-related cellular phone expenses.  For example, Mr. Rodriguez and other aggrieved employees were required to install an application on their personal cellular phones called "V-TAS."  V-TAS used a substantial amount of data and was used to track all aspects of employees' work—location, mileage, time on the road, and so forth.  However, URS failed to reimburse Mr. Rodriguez and other aggrieved employees for all expenses incurred with regard to V-TAS.  For example, Mr. Rodriguez had to upgrade his cellular data plan to "unlimited" in order to handle the massive amounts of data used by the V-TAS application, at a cost of $70 per month.  However, URS only reimbursed $40 of his cellular phone expenses per month.  Other aggrieved employees were reimbursed either $20 or $40 per month, depending on the facility they worked out of.

Second, URS did not provide Mr. Rodriguez and other aggrieved employees with necessary safety gear, thus requiring Mr. Rodriguez and other aggrieved employees to provide their own safety gear, such as safety vests and gloves.  However, Mr. Rodriguez and other aggrieved employees were not reimbursed for these expenses.  For example, Mr. Rodriguez had to purchase gloves on a biweekly basis, at a cost of $10 or more per pair.  Other aggrieved employees had to purchase their safety vests on a monthly basis throughout their employment, at a cost of approximately $25 per vest.  URS failed to reimburse Mr. Rodriguez and other aggrieved employees for these costs.

Third, URS also mandated that Mr. Rodriguez and other aggrieved employees purchase and maintain their own tools and supplies which they were required to use at work.  URS had a company-wide policy of requiring employees to purchase all necessary tools, and, throughout his employment, Mr. Rodriguez purchased items including, but not limited to: loading bars, height sticks, night lamps, and cleaning supplies.  Mr. Rodriguez estimates that he spent approximately $180 total on tools and $60 per month for supplies over the course of his employment.

Fourth, URS required Mr. Rodriguez and other aggrieved employees to wear uniforms bearing the company logo on a daily basis, but failed to provide Mr. Rodriguez and other aggrieved employees with uniform cleaning services or reimburse them for cleaning expenses incurred.  For example, due to the nature of their work, Mr. Rodriguez's and/or other aggrieved employees' uniform pants and shirts would become stained with grease such that they were unable to mix these clothes in with their other laundry.  As a result, they had to wash uniform items separately from any of their other items, thus incurring additional utility and laundry expenses.

Fifth, URS had a company-wide policy of requiring other aggrieved employees to utilize their own personal vehicles to carry out company business, but URS failed to reimburse them for all costs of travel, including mileage.  For example, other aggrieved employees were required to use their personal vehicles to travel to pick up their trucks from remote locations.  Although URS required other aggrieved employees to utilize their own vehicles to complete these tasks as part of their job duties, URS never reimbursed them for all of their travel expenses.

Finally, as stated, URS had a company-wide policy of requiring Mr. Rodriguez and other aggrieved employees to travel in their own personal vehicles to medical clinics to undergo mandatory drug testing, but did not reimburse them for their travel expenses.  For example, as described above, Mr. Rodriguez drove his personal vehicle to undergo drug testing per URS's instructions, but was not reimbursed for his mileage to and from the medical facilities.  URS had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred.

URS could have provided Mr. Rodriguez and other aggrieved employees with the actual tools for use on the job, including safety gear, tools and supplies, company phones, and company vehicles to be used for fulfilling work-related tasks, or reimbursed employees for their actual cellular phone usage, travel expenses, tool and supply expenses, uniform expenses, and mileage.  Instead, URS passed these operating costs off onto Mr. Rodriguez and other aggrieved employees.  Thus, URS had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred.

URS's policy and/or practice of passing its operating costs on to Mr. Rodriguez and other aggrieved employees by requiring that they provide their own safety gear, tools, and supplies, and use their own personal cellular phones and personal vehicles for business, and failing to reimburse these expenses is in violation of California Labor Code section 2802.  Mr. Rodriguez and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### Violation of California Labor Code § 2810.5(a)(1)(A)-(C) – Failure to Provide Notice of Material Terms of Employment

California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees of the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claimed as part of the minimum wage, including meal or lodging allowances.  Effective January 1, 2015, an employer's written notice pursuant to section 2810.5 must also include a

statement that the employee may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates.

URS failed to provide Mr. Rodriguez and other aggrieved employees written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).

URS's failure to provide Mr. Rodriguez and other aggrieved employees with written notice of basic information regarding their employment with URS is in violation of Labor Code section 2810.5. Mr. Rodriguez and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Personal Protective Equipment

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

URS, on a company-wide basis, failed to provide Mr. Rodriguez and other aggrieved employees with safety and/or personal protective equipment, such as gloves and safety vests, to keep them safe in the workplace, including URS's depots and other facilities. Despite the fact that URS required employees to wear certain personal protective equipment, including gloves and safety vests, URS failed to provide such reasonably necessary equipment to Mr. Rodriguez and other aggrieved employees to keep them safe.

URS's failure to provide Mr. Rodriguez and other aggrieved employees with basic personal protective equipment for the workplace violates Labor Code sections 6401 and 6403. Mr. Rodriguez and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### California Labor Code § 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." URS, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Rodriguez's and other aggrieved employees' rights by violating various sections of the California Labor Code.

12

Accordingly, Mr. Rodriguez seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Rodriguez, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against URS for violations of California Labor Code sections 201, 202, 203, 204, 221, 222.5, 224, 226(a), 226.7, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 2810.5, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Mr. Rodriguez seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter. If you have any questions, please contact me at the phone number or address below:

> Anthony Castillo
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 712-8169

Best Regards,

Anthony Castillo

Copy: URS MIDWEST, INC. (via U.S. Certified Mail); UNITED ROAD SERVICES, INC. (via U.S. Certified Mail)

13



UNITED STATES POSTAGE
PITNEY BOWES
$007.72°
02 1P
0000660553
MAILED FROM ZIP CODE 90067

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

URS MIDWEST, INC.
10701 MIDDLEBELT RD
ROMULUS MI 48174

9590 9402 1512 5362 2739 82

2. Article Number *(Transfer from service label)*

7010 2780 0003 1943 9460

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

CERTIFIED MAIL™

7010 2780 0003 1943 9460

URS MIDWEST, INC.
10701 MIDDLEBELT RD
ROMULUS MI 48174

...ne
...AW APC
Park East, Ste 1000
CA 90067

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

Postage $ 1.42

Certified Fee 3.50

Return Receipt Fee (Endorsement Required) 2.80

Postmark Here
Israel Rodriguez
V. USR Midwest, Inc.

Restricted Delivery Fee (Endorsement Required)

Total Postage & Fees $ 7.72

Sent To
URS MIDWEST, INC.

Street, Apt. No.; or PO Box No.
10701 MIDDLEBELT RD

City, State, ZIP+4
ROMULUS MI 48174

PS Form 3800, Au...

7010 2780 0003 1943 9460

PITNEY BOWES

$007.72⁰

02 1P
0000066553
MAILED FROM ZIP CODE 90067

UNITED STATES POSTAGE

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

UNITED ROAD SERVICES, INC.
10701 MIDDLEBELT RD
ROMULUS MI 48174

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 1512 5362 2739 75

2. Article Number *(Transfer from service label)*

7010 2780 0003 1943 9477

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

CERTIFIED MAIL™

7010 2780 0003 1943 9477

UNITED ROAD SERVICES, INC.
10701 MIDDLEBELT RD
ROMULUS MI 48174

...ne
AW APC
Park East, Ste 1000
CA 90067

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ 1.42 |
| Certified Fee | 3.50 |
| Return Receipt Fee (Endorsement Required) | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.72 |

Postmark Here

Israel Rodriguez
V. United Road
Services, Inc.

7010 2780 0003 1943 9477

Sent To    UNITED ROAD SERVICES, INC.
Street, Apt. No.;   10701 MIDDLEBELT RD
or PO Box No.
City, State, ZIP+4   ROMULUS MI 48174

PS Form 3800, Au...